ALLEN, (NOURSE v.)
[See Nourse v. Allen, Case No. 10,367.]

## Case No. 233.

### ALLEN v. OGDEN.

[1 Wash. C. C. 174.][1]

Circuit Court, D. Pennsylvania. Oct. Term, 1804.

PRINCIPAL AND AGENT—POWERS OF AGENT—CONVERSION—TENDER—LIENS.

1. Where a power to an agent is general, he may do any thing to bind his principal, which is within the scope of his authority.

2. If the agency be special, every thing is void, which may be done, unless in strict conformity with the authority.

3. If, upon demand, the defendant said he would retain the goods demanded, and that he knew a suit would be brought; this is evidence of a conversion.

4. When a party, holding goods in his possession adversely, has paid rent for the premises in which they are stored; it is not necessary to tender the rent, in order to enable the owner of the goods to recover them in an action of trover.

5. Liens depend upon contracts, express or implied; and none can be implied, where the defendant acts adversely to the rights of the person for whom he has paid the money.

[Cited in Gunton v. Nock, 9 Wall. (76 U. S.) 382.]

At law. The case will appear in the charge of the court.

WASHINGTON, [Circuit Justice.] This is an action of trover and conversion, for forty-one tons of pig iron. John Davis, in January 1802; being possessed of a quantity of pig iron, at different places, and amongst others, the quantity in question, it being in Swartout's yard, in New-York, rented by Davis as a place of deposit for that article; empowered a Mr. Champless, in New-York, in writing, to sell the same for the highest market price in cash; or if this could not be done, to offer the same to the defendant, at the market price, on condition that he should pay down 6000 dollars, and that the residue might go to the credit of Davis, against a demand which Ogden had in his own right, or as agent against Davis. The offer was made to Ogden in February, but he took time to consider, and never afterwards gave an answer to that proposition. Champless sold the iron to Watkins; but afterwards, upon receiving a letter from Davis, informing him that he had sold all the iron to the plaintiff, he, Champless, cancelled the sale he had made. The sale to the plaintiff was made on the 6th of February, at 25 dollars a ton; which, with the expense of removing a great part of it, was supposed equivalent to the market price in New-York, and the amount was to go to Davis's credit, against a demand of the plaintiff; and if the iron should be sold for more than the 25 dollars, and expenses, the excess was also to be placed to the credit of said Davis. On the

---

[1][Originally published from the MS. of Mr. Justice Washington, under the supervision of Richard Peters, Jr., Esq.]

19th of February, a bill of parcels was delivered to the plaintiff, on which day, the credit was entered on the plaintiff's books. The sale to the plaintiff, is proved by Davis, to have been real and bona fide. Late in February, Champless being alarmed by a letter from a Mr. Bond, stating, that unless a note of Davis's for 600 dollars was paid, the iron would be sacrificed, thought he would benefit Davis by selling it to Ogden, provided this could be done. The subject was proposed to Ogden, and the original power to Champless laid before counsel; and the sale to the plaintiff revealed both to the defendant, and his counsel. The counsel thought the sale to the defendant might nevertheless be valid, and in consequence of this, the sale was made, on the 1st March, for $2 50 cts. less than the market price; and the whole amount was agreed to be put to the credit of Davis, against the claim of defendant, as before mentioned. The defendant paid the rent due to Swartout, and removed the iron from the yard. The defendant informed one of the witnesses, that the plaintiff had claimed of him the iron, and that there would be a suit about it. The defendant also said he would retain the iron. Upon this case, if the witnesses who prove it on the part of the plaintiff, (for the defendant has called none,) be believed, one thing is clear, and that is, that whether the plaintiff has a right or not, the defendant most clearly has none. The authority to Champless was special, and therefore he had no power to sell the iron to the defendant, upon any other terms than receiving 6000 dollars in cash; yet it was sold on terms very different. Where a power is general, the attorney may do any thing to bind his principal, which is within the scope of his authority. But if it be special, every thing is void, if he does not act in strict conformity to his authority. But, if the power had been general, still, every thing done under it, after it was revoked, and this made known to the defendant, (as in this case it was,) was void.

As to the plaintiff's title, it is complete, if the witnesses are believed. The moment the sale took place, Davis was receiving credit for the amount; as much so, as if he had received so much money: delivery of the iron then was not necessary. Two objections were made to the plaintiff's right of recovery; first, in the form of a motion for a nonsuit, and then before the jury. First, that a conversion is not proved. It is proved that the iron had been demanded, and the defendant said he would retain it, and that a suit would be brought. This is evidence of a conversion. Secondly, that the plaintiff ought, before he brought his suit, to have tendered the money paid by defendant, for the rent of the yard. No case can be produced, in which it is necessary to do this, where the defendant acts under a claim of property, adverse to the plaintiff's right. Here, Ogden, without a shadow of title, interferes with the plaintiff's property; removes it from the place where he had deposited it; and now claims what he had officiously paid, in order to give him possession. Liens depend upon contracts, express, or implied; and none can be implied, where the defendant acts adversely to the right of the person, for whom he has paid the money.

Cases cited, to show that a lien exists in this case. [The Perseverance,] 2 C. Rob. [Adm.] 239; [Beningsage v. Ralphson,] 2 Show. 261; [Arnold v. Jeffreyson.] 2 Salk. 654; [Yorke v. Grenaugh,] 2 Ld. Raym. 866; [Green v. Farmer,] 4 Burrows, 2214. Cases cited to show, that if a man assumes a right to another's property, as if they were his own, it is a conversion. [Doe v. Richards,] 3 Term R. 357; [Baldwin v. Cole,] 6 Mod. 212; 6 Bac. Abr. (Last ed.) 679.

Verdict for plaintiff.

NOTE. [from original report.] He who has an absolute or general property, may bring trover, though he never had the actual possession; for property, in personal things, draws to it the possession, to enable him to bring trover or trespass against a stranger who takes it away: but, he must have a right of possession. Yet, if a person having a special property as a bailee, sells and delivers the goods to another as his own, bona fide, and without notice; the general owner cannot bring trover, or any other action, against the vendee; for, by the sale, his property is altered. So, possession, with an assertion of title, or even possession alone, gives such a property, as will enable a man to bring this action against a wrong doer; for possession is prima facie evidence of property, sufficient to put the defendant upon proof of property. So, the finder of a thing, may bring trover against a stranger, who converts it. If the goods come to the defendant by delivery or finding, the plaintiff must demand them; and refusal is evidence of a conversion. But, it is not evidence of a conversion, where it is obvious that the defendant has made no conversion; as if he has cut down trees, and left them lying there; nor in the case of a carrier, &c. where the goods were lost through negligence, or were stolen; but action on the case is the remedy: but, if it does not appear that they were lost, or if the carrier had them, when he denied to deliver them, it is a conversion. Bull. N. P. 44. Nor where that carrier has a lien on the goods for a debt due him, which is not paid, nor tendered; but trover will lie, if the carrier breaks open the box containing the goods, or sells them, or has them in possession when the demand is made. Not only claiming the property as one's own, but asserting the right of another over it, is, upon demand and refusal, evidence of a conversion. Denial to one who has a right to demand goods, is an actual conversion, and not merely evidence of it; for the assuming upon one's self the property in, and right of disposing of, another's goods, is a conversion. So, where one intrusted with the goods of another, puts them into the hands of a third person, without orders, it is a conversion. Making up of a thing found, or delivered, is a conversion; so is a misuse of it. So, taking and carrying away is a conversion, without demand or refusal. Wilbraham v. Snow, 2 Saund. 47, note 1; [Doe v. Richards,] 3 Term R. 357; [Baldwin v. Cole,] 6 Mod. 212; 6 Bac. Abr. 679. In [Green v. Farmer,] 4 Burrows, 2218, Lord Mansfield lays it down, that courts are disposed to maintain liens: 1. Where there is an express contract. 2. Where it is implied from the usage of trade. 3. Where it may be implied from the manner of dealing

between the parties, in the particular case. 4. Where the factor claims it, for the balance of his general accounts.

---

## ALLEN, (OSGOOD v.)