Nov. Term, 1837.

CHILL
v.
HORNISH.

---

CHILL, an Infant, *v.* HORNISH and Others.

The legal holder of a certificate of the agent of state for a lot in *Indianapolis,* devised an undivided moiety of it to *A.* his daughter. She married *B.,* and during the marriage, her moiety of the lot was set apart to her under authority of law. *A.* died without having disposed of her interest in the property, and leaving by her marriage with *B.* one son, *C.,* her only heir. Previously to his wife's death, *B.* obtained from the agent of state a conveyance in fee for said half lot, and sold it after her death to a purchaser without notice. *B.* died. *Held,* that the purchaser from *B.* had no title to the premises, and that *C.,* as the heir of his mother, was entitled to a conveyance for the same from the agent of state.

Saturday,
December 16.

ERROR to the *Marion* Circuit Court.

SULLIVAN, J.—The complainant, by his next friend, filed his bill in the *Marion* Circuit Court, representing that in the year 1821, one *Wilkes Reagan* purchased of the agent of state for the town of *Indianapolis,* lot numbered 12, in square number-ed 60, in said town, for the sum of 87 dollars, one-fifth of which was paid in hand, and the residue to be paid in four equal annual instalments; that the agent thereupon executed and delivered to *Reagan* a certificate of purchase according to law; that on or about the fifth of *April,* 1822, *Reagan* assign-ed the certificate to one *Knutt,* who afterwards in *March,* 1823, assigned it to *Samuel Johnson,* the grandfather of the complainant; that *Samuel Johnson,* in *August,* 1824, departed this life, having first devised to his daughter *Sarah,* (who was the mother of the complainant,) and her heirs, the undivided half of said lot; that *Samuel Johnson* in his life-time paid two

of the annual instalments of the purchase-money for the lot, and the residue of the purchase-money was paid by his executor pursuant to directions in his will; that *Sarah Johnson* afterwards intermarried with *Zebulon Chill*, the father of the complainant.

The bill further charges that in the year 1826, said lot was, on the petition of *Z. Chill* and *Sarah* his wife, divided amongst the proprietors thereof by an order of the *Marion* Circuit Court, and the west half thereof was set apart to said *Sarah;* that she died soon thereafter, without having disposed of her right or any part of her interest in the lot, leaving the complainant her only child and heir at law; that during her life, *Z. Chill* fraudulently procured the agent of state to make to him a deed of conveyance for the west half of said lot, and that after the death of his wife, he sold and conveyed the same to the defendant *Bennett*, who afterwards sold and conveyed to the defendant *Hornish;* that after the conveyance to *Bennett, Chill* departed this life, &c.

*Bennett, Hornish,* and *John Johnson* executor of the last will and testament of *Samuel Johnson*, deceased, are made defendants to the bill.

The answers of *Bennett* and *Hornish* deny all notice of the facts charged in the bill. They aver that when *Bennett* purchased of *Chill*, he (*Chill*) was in the quiet and undisputed possession of the premises; that they are innocent purchasers for a valuable consideration, &c. They deny all fraud, &c.

General replication by the complainant. *Johnson*, the executor of *Johnson*, deceased, makes no answer, and the bill as to him is taken as confessed.

The certificate of the agent of state to *Reagan*, the original purchaser of the lot, with the assignments on it, the last will and testament of *Samuel Johnson*, deceased, and copies of the conveyances from the agent of state to *Z. Chill*, from *Chill* to *Bennett*, and from *Bennett* to *Hornish*, are made parts of the record. The heirship of the complainant is proved by the admission of the parties, and by the testimony of *B. I. Blythe*. It is also proved that *Samuel Johnson* in his life-time, and his executor since his death, completed the payments for the lot.

The Circuit Court, on the final hearing of the cause, dismissed the bill at the costs of the complainant; and from that decree he has appealed to this Court.

The office of agent of state for the town of *Indianapolis* is created by the act of *January* the sixth, 1821, and the powers and duties of the agent are prescribed by that act. His powers, whether general or limited, are .to be determined by reference to the act conferring them, and the validity of the defendant's title to the lot in controversy, will depend on the settlement of that point. The act, amongst other things, makes it the duty of the agent to attend the sales of lots at the seat of government, and to give the purchasers certificates of purchase, and when the payments are fully completed, to make to such purchasers, or their legal representatives, deeds in fee-simple for the lots so purchased by them. If the agent of state, in conveying the property to *Z. Chill*, transcended the authority delegated to him by law, his principal is not bound by his acts, the title remains in the state, and the act of the agent is void.

All the power possessed by the agent to convey, is conferred by the above-recited act. His commission is to convey to purchasers or their legal representatives; and the question in the present case is, was *Z. Chill* the legal representative of the original purchaser of the lot in question? It is manifest he was not. If the conveyance had been made to *Z. Chill* and wife, or to *Z. Chill*, for the joint use of himself and wife, a different question, probably, would have presented itself to the Court. We know of no principle of law which vests in the husband, by virtue of the marriage, the title to the real estate of his wife. The agent therefore in conveying to *Z. Chill*, who was neither the original purchaser, nor his legal representative, departed from the authority conferred upon him. The law is well settled, that the acts of a special agent beyond the limits of his authority, will not bind his principal. A transfer of property by an agent, not authorised by his commission to make it, or which is not transferred according to the scope of his authority, passes no title to the thing transferred. 2 B. & A 137. *Denning* v. *Smith*, 3 Johns. C. R. 344.—*Allen* v. *Ogden*, 1 Wash. C. C. Rep. 174. So, where an agent misapplies property, it confers no better title on the receiver than he possessed himself. 1 Moore, 556.

Restricted as the agent's power is, to convey only to pur-

chasers or their legal representatives, we must regard him as an agent with circumscribed powers, and that his conveyance to *Z. Chill* is a void act and confers no title whatever. *See* Petersdorff's Ab. tit. Principal and Agent.—Newl. on Cont. 178.—1 Salk. 96.—Payley on Agency, 162, 3, 4.—1 Atk. 497. 1 Wash. C. C. Rep. 113.

*Nov. Term, 1837.*

If *Z. Chill* derived no title to the lot by the conveyance from the agent of state, it is clear he could convey none. The legal title remains where it was previously to the conveyance. The defendants, *Bennett* and *Hornish*, may be purchasers for a valuable consideration, without notice, and yet have no title which a Court can protect. The protection which a Court of equity throws around innocent purchasers for a valuable consideration, cannot be made to apply to their case.

We think the complainant is entitled to a conveyance of the property, but because the agent of state for the town of *Indianapolis* is not made a party, he cannot in the present state of the pleadings obtain the remedy he seeks. The Circuit Court instead of dismissing the bill, should have given the complainant leave to amend by making proper parties.

*Per Curiam.*—The decree is reversed. Cause remanded, &c.

*C. Fletcher* and *O. Butler*, for the plaintiff.
*J. Morrison*, for the defendants.