# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1867, IN THE FIFTY-SECOND
YEAR OF THE STATE.

| 29 | 1 |
| 198 | 595 |
| 29 | 1 |
| 150 | 57 |
| 152 | 428 |
| 29 | 1 |
| 166 | 107 |

———————◆———————

## KEY and Another *v.* OSTRANDER.

DEED.—CONSTRUCTION OF.—That part of a deed. in which the premises
conveyed are described is always construed with great liberality.

SAME.—Where the premises intended to be conveyed were described as forty
acres in a certain section, north of *Otter Creek*, and reference was made
in the deed to a mortgage of the same premises, in which the land was
described as all of said section north of *Otter Creek*, it was held that the
deed was not void for uncertainty.

MORTGAGE TO SCHOOL-FUND.—SALES BY AUDITOR.—In selling lands
mortgaged to the school-fund, the auditor must proceed strictly in accord-
ance with the requirements of the statute, and where a sale is made for
the payment of a greater sum than is actually due, the sale is void.

SAME.—A payment of interest on such a loan to the county treasurer is a
valid credit, and the failure of the borrower to file the treasurer's receipt
with the auditor and procure a quietus, will not excuse the auditor for
selling the mortgaged property for more than the sum actually due.

APPEAL from the *Vigo* Circuit Court.

ELLIOTT, J.—This was an action by *Key* and *Bailey*, the
appellants, against *Ostrander*, to recover the possession of a
tract of land, which is described in the complaint as "forty

VOL. XXIX.—1

acres, in the north-east quarter of section thirty-six (36), north of *Otter Creek*, in township thirteen (13) north, of range nine (9) west, in *Vigo* county, *Indiana*."

The defendant answered by the general denial, and also by a special paragraph, on which issue was taken, but which need not be noticed further, as all matters of defense were admissible under the general denial.

The court to which, by agreement of the parties, the cause was submitted for trial made a special finding of the facts, and stated the conclusions of law thereon, in favor of the defendant.

Motions for a new trial and for a judgment for the plaintiffs, on the facts found by the court, were made and overruled, to which proper exceptions were taken. Judgment for the defendant.

In addition to the special finding, the record also contains the evidence. The facts, so far as it is necessary to state them to a proper understanding of the questions involved, are these: On the 3d of *July*, 1857, the defendant borrowed of the auditor of *Vigo* county three hundred dollars of the school-fund of said county, and executed his note and mortgage therefor, payable to the State of *Indiana*, on or before the 3d day of *July*, 1862, with interest thereon at the rate of seven per cent. per annum in advance. Both the note and mortgage are in conformity with the statute regulating such loans, and contain the condition that "in case of failure to pay any installment of said interest, the principal sum shall become due and payable, together with all arrears of interest, and on failure to pay such principal or interest when due, two per cent. damages shall be collected, with costs, and the premises mortgaged may be forthwith sold by the county auditor for the payment of such principal sum, interest, damages and costs."

It is conceded that the defendant paid all the interest due on the loan prior to the 3d day of *July*, 1863, and was properly credited therewith on the auditor's books; but it did not appear by the auditor's books that the interest

due on the 3d of *July*, 1863, and the 3d of *July*, 1864, had been paid. Thereupon the auditor advertised said land for sale, and having given sixty days notice of the time and place of sale, by publication in a newspaper printed and published in said county, and also by posting up printed notices thereof in three public places in the township where the land is situated, and one at the court house door in said county, did, between the hours of 10 o'clock A. M. and 4 o'clock P. M., on the 23d day of *January*, 1865, offer said land for sale at public auction, at the court house door in said county, for the payment of the following sums, claimed to be due on said mortgage, to-wit:

The principal sum.............................$300 00
Interest from the 3d of *July*, 1863...............  32 66
Cost of publishing notice......................   1 85
Damages, (2 per cent.).........................   6 62

    Total...................................$341 13

No person bidding, for a less quantity than the whole, a sum sufficient to pay said amount, the whole of the tract so mortgaged was thereupon offered for sale, and the plaintiffs being the highest bidders, it was struck off and sold to them for the sum of $425.

The county treasurer was present and made an account of said sale, which was signed by the treasurer and auditor and recorded in the commissioners' record. The plaintiffs paid the purchase money, and the auditor executed to them a deed of conveyance for said land.

One of the questions involved in the case relates to the sufficiency of the description of the land. It is described in the mortgage on which it was sold as follows: "All the following real estate, to-wit, in N. E. qr. of section 36, north of *Otter Creek*, 13, 9—40 acres."

In the notice of sale it is described thus: "In the north-east quarter of section thirty-six (36), north of *Otter Creek*, in township thirteen (13) north, of range nine (9) west, forty acres. Mortgaged by *A. M. Ostrander.*"

It is twice described in the auditor's deed to the plaintiffs. First, in that part of the recital referring to the notice given of the time and place of sale, where this description is given, viz: "The following described land, to-wit, in the north-east quarter of section thirty-six (36), in township thirteen (13) north, of range nine (9) west, north of *Otter Creek*, containing forty acres, lying in *Vigo* county, *Indiana.*" The other is in that part of the conveyance containing the grant, and is as follows: "The following described land, to-wit, forty acres in the north-east quarter of section thirty-six (36), north of *Otter Creek*, in township thirteen (13) north, of range nine (9) west, in *Vigo* county, *Indiana.*"

Among the facts stated in the special findings of the court are the following: "That the defendant, on the 17th day of *March*, 1864, paid to the treasurer of said county the sum of twenty-one dollars, the interest due on said loan of three hundred dollars from the 3d day of *July*, 1863, to the 3d day of *July*, 1864, and took said treasurer's receipt therefor, but that said defendant never thereafter filed said receipt with said auditor; that said payment of twenty-one dollars was then credited by said treasurer on the interest of said loan for one year, commencing *July* 3d, 1863, to *July* 3d, 1864, on a record or book whereon he, as such treasurer, kept an account of all the township, school, and trust funds by him loaned; showing, in separate columns, the names of the borrowers, the amount borrowed, to what fund the same belonged, and the different years for which interest had been paid; that at the time of said sale by the auditor said record showed that the interest on said loan had been paid by said defendant for the years 1857, 1858, 1859, 1860, 1861, 1862 and 1863, making the payment of all interest due to *July* 3d, 1864, as shown by the treasurer's books; that at the time of said sale there was due on said loan, of principal, three hundred dollars, and of interest, eleven dollars and sixty-six cents, making

the total, principal and interest, three hundred and eleven dollars and sixty-six cents."

The evidence upon which this portion of the finding was based was the treasurer's book, the treasurer's receipt to the defendant for twenty-one dollars, the interest on said loan due *July* 3d, 1863, and the oral evidence of the defendant to the payment of said sum. All of which was objected to by the plaintiffs, on the ground of irrelevancy, but was received by the court over said objection, to which proper exceptions were taken. As conclusions of law from the facts stated, the court found:

"1. That the deed of the auditor to plaintiffs is void for uncertainty in the description of the land.

"2. The sale by the auditor was void, the land having been advertised and sold by him in satisfaction of a larger amount than was due on the mortgage at the time of sale.

"3. That the plaintiffs are chargeable with notice of the fact that the interest on said loan from *July* 3d, 1863, to *July* 3d, 1864, had been paid at the time of said sale, and that the said land was sold to satisfy a greater amount than was due on said mortgage."

Two questions are presented by the record for the consideration of this court. They are:

1. Is the deed of the auditor to the plaintiffs void for uncertainty in the description of the land conveyed?

2. The land having been sold by the auditor, in good faith, for the payment of the proper amount due on said loan, as the same appeared by the account thereof in the record of such loans in the auditor's office, the defendant having neglected to file with the auditor, as required by law, the treasurer's receipt for the payment of the interest due in advance on the 3d of *July*, 1863, is the sale void, as having been made for a greater amount than was due on the mortgage at the date of the sale?

In discussing the first question, it is proper to notice an error in the finding of the court in the description of the land in the mortgage. The court, in its finding, says:

"The mortgage was on a certain tract of land described as follows, to-wit, in the north-east quarter of section thirty-six, north of *Otter Creek,* in township thirteen north, of range nine west. Forty acres." While, as we have seen, the actual description in the mortgage is: "All the following real estate, to-wit, in N. E. qr. of section 36, north of *Otter Creek,* 13, 9—40 acres."

This description is rather awkwardly framed, but, as we understand it, covers all the land north of *Otter Creek* in the north-east quarter of the section named. No difficulty could arise in locating the land by the description. The proper boundary lines of the quarter section form its boundary on the east, north and west, and *Otter Creek* on the south. The mortgage, therefore, is not void for uncertainty in the description of the land mortgaged. All the other descriptions, though differing slightly in phraseology, are substantially the same as that first given in the auditor's deed, viz: "The following described land, to-wit, in the north-east quarter of section 36, in township 13 north, of range 9 west, north of *Otter Creek,* containing forty acres, lying in *Vigo* county, *Indiana.*"

Is the deed void for uncertainty in the description of the land conveyed? We think not. "The general rule in regard to the construction of the description of the premises in a deed is one of the utmost liberality. The intent of the parties, if it can by any possibility be gathered from the language employed, will be effectuated." *Peck* v. *Mallams,* 10 N. Y. 509.

A practical difficulty might possibly arise in the actual location of the land by the description, but the existence of any such difficulty is not patent on the face of the deed, nor was there any other evidence given on the trial by which it was made to appear. The deed conveys forty acres, north of *Otter Creek,* in the north-east quarter of a given section. It does not, in terms, convey all of the quarter section lying north of *Otter Creek,* nor does it appear how much of the quarter section is north of that creek;

but if, in fact, there are but forty acres of it north of *Otter Creek*, then the deed conveys the whole, and there could be no difficulty in making the location. *Laub* v. *Buckmiller*, 17 N. Y. 620. But there is another reason why the description is not void for uncertainty. The following addition to the description of the land, heretofore given, is made in the deed: "Which said described land was mortgaged to the State of *Indiana* by *Anthony M. Ostrander* and *Lucinda*, his wife, on the 3d day of *July*, 1857, for the use of congressional township twelve north, of range nine west, of said *Vigo* county, to secure the payment of three hundred dollars, together with interest thereon," &c. It further appears by the auditor's deed that the whole of the land so mortgaged by *Ostrander* was sold to the appellants. Any apparent uncertainty in the description of it, as given in the deed, may be aided by reference to the mortgage referred to, and we have heretofore seen that the mortgage covers all of the described quarter section lying north of *Otter Creek*. It seems clear, therefore, that the deed is not void for uncertainty in the description of the land.

Second. Was the sale of the land by the auditor to the appellants void because of the fact that it was sold for the payment of a greater sum than was actually due on the mortgage, at the date of the sale, under the facts found by the court? It is not denied by the appellants that the interest on the mortgage, due in advance on the 3d of *July*, 1863, for one year next succeeding that date, being twenty-one dollars, was paid by *Ostrander* to the county treasurer on the 17th of *March*, 1864, and the payment duly entered on the treasurer's books, and for which the treasurer gave to *Ostrander* a proper receipt; nor, allowing that payment, that the land was sold for the payment of twenty-one dollars more than was due on the mortgage at the date of sale. But they insist that it was *Ostrander's* duty to have filed the treasurer's receipt with the county auditor and taken his quietus for the payment, and not having done so he was not entitled to a credit for the amount so paid. On this

hypothesis they base their objection to the evidence admitted by the court to prove the payment.

The statute requires that all interest on such loans "shall be paid to the county treasurer, and his receipt shall be filed with the county auditor, who shall give the payer a quietus therefor and make proper entries." Acts 1861, § 95, p. 85.

The general management of the school funds is imposed on the county auditor. He makes all the loans thereof, and takes all mortgages, notes, or other securities given therefor, and on the non-payment of either principal or interest when due, it is his duty to collect the same either by suit or a sale of the property mortgaged. And it is the evident policy of the law that he shall keep a full and accurate account of all receipts and disbursements on account of the fund. All monies belonging to the fund are received and kept by the county treasurer, but are disbursed by him only on the warrant of the auditor. The object of requiring the treasurer's receipts to be filed with the auditor obviously is to enable the latter to keep a proper account of the condition of the fund, and, at the same time, to hold a salutary check on the treasurer. But that is not the only check provided by the statute.

The treasurer is also required to keep an account of all such receipts and disbursements in books so kept and arranged "that the amount received and paid out, on account of separate and distinct funds or specific appropriations, shall be exhibited in separate accounts," &c. 1 G. & H., § 6, p. 641. It is made the duty of both the auditor and treasurer to make detailed reports, in writing, to the board of county commissioners in *March*, annually, of the amount and condition of the school funds of the county, by which it is required to be shown, among other things, the amount of interest collected upon said funds within the year then ending, and the amount due and unpaid. It is also made the duty of the board of county commissioners, annually, at their *March* session, in the presence of the

auditor and treasurer, to examine said reports, and examine fully into the state and condition of said funds. Acts 1861, §§ 107, 108, p. 87.

The statute provides that when the principal or interest of any such loan becomes due and remains unpaid, the auditor shall proceed to collect the same by suit on the note, or by sale of the mortgaged premises. Acts 1861, § 97. Subsequent sections prescribe the duties of the auditor and treasurer in conducting such sales. Section 100 requires the sale to be made at the court house door, and provides that "the auditor shall sell so much of the mortgaged premises to the highest bidder, for cash, as will pay the amount due for principal, interest, damages and costs." The auditor, as the trustee of the fund, was authorized to sue for and collect the amount due on the mortgage by the ordinary process of law. He was also invested with the power to sell the mortgaged premises for the same purpose. He chose to collect by the latter mode. It was a naked power, not coupled with an interest, and he was therefore bound, in making the sale, to a strict observance of the requirements of the statute conferring the power. He was only authorized to sell so much of the mortgaged premises as would pay the amount due on the mortgage, including principal, interest, damages and costs. It was his duty, therefore, in executing the power to know the amount actually due, and to offer the premises for sale for the payment of that amount and no more. If he demanded a larger amount than was due, then the offer was not within the power conferred on him, and the sale is void. This is settled by the case of *Vail* v. *McKernan,* 21 Ind. 421. It was the fault of *Ostrander* in failing to file the treasurer's receipt with the auditor that he was not credited on the auditor's books with the twenty-one dollars interest paid to the treasurer on the 17th of *March,* 1864. Still it was a valid payment of that amount of interest on the mortgage. It was paid to the treasurer, whose duty it was to credit it to the proper fund, which he did. It thereafter belonged

to the fund, and the treasurer was' bound to account to the fund for it. It was no longer *Ostrander's* money, or subject to his control, and he was entitled to a credit for it on the mortgage. Suppose the auditor, instead of proceeding under the power of sale, had sued *Ostrander* on his note, would it be doubted that, under a plea of payment and proof of the facts, he would be entitled to a credit for the amount? Certainly not. For these reasons we are clearly of opinion that the auditor sold the land for the payment of twenty-one dollars more than was due on the mortgage, including principal, interest, damages and costs, at the time of the sale, and that the sale, for that reason, was void. The judgment must therefore be affirmed.

The judgment is affirmed, with costs.

*D. W. Voorhees, J. J. Key* and *J. M. Hanna*, for appellants.
*C. E. Hosford* and *P. Brown*, for appellee.